Scott, J.
The questions arising in this case relate to the validity, extent, and priority of liens alleged to be held by creditors upon certain real estate of the two defendants, A. S. Petticrew and Ohas. D. Bennet. The plaintiff has liens upon the same property, which he seeks to enforce, and the other creditors are made defendants.
The questions presented in argument relate only to two of those liens.
James Brooks, oue of the defendants, sets up in his answer a mortgage lien, which is claimed by the plaintiff to be void as against other lienholders, by reason of a defect in the certificate of acknowledgment. The certificate reads thus : “ The State of , ■County, ss. Before me, a justice of the peace within and for said ■county, personally appeared the above-named Algernon S. Petticrew and Charles D. Bennet, partners of the firm of Bennet & Petticrew, and acknowledged the signing and sealing of the above deed,” etc. (continuing in the usual form), and is signed “ Thos. B. Tilton, J. P.”
A printed form was used in drawing the mortgage and certificate of acknowledgment, and the blank loft in the caption of the certificate was not filled up by the insertion of the state and county within and for which the justice acted.
Does this omission invalidate the instrument ?
In the body of the mortgage, the grantors and the grantee are each described as “of the county of Montgomery and State of Ohio,” and the mortgaged premises are said to be “ situate in the county of Montgomery, in the State of Ohio.” No other county or state is mentioned in *any part of the instrument. If we [250 wholly reject the caption of the certificate (and being without meaning, by reason of the. blank, it can only be rejected), yet we'think that in describing the officer taking the acknowledgment as “a justice of the peace within and for said county,” it may be fairly understood as referring to the county named in the body of the mortgage. The certificate is not wholly independent of the deed, the acknowledgment of which it certifies. It refers to it in express terms, and could acquire a meaning and operation only by such reference. The first time the grantors are named in the certificate, they are called “the above-named Algernon S. Petticrew,” etc., *251 clearly referring to the mortgage, where, only, we find the parties-named. The terms “said,” “aforesaid,” “above-named,” and the like, are -of kindred character, each referring to some antecedent; and if in this case we may look to the mortgage for the antecedent of one of those terms, why may we not do so in the case of another?' If authority were needed in support of this construction, the case of Fuhrman v. Louden, 13 Serg. & Rawle, is precisely in point. In. that case the blank before “county,” in the caption of the certificate, was not filled; and it was held that the words “for said county,” in the certificate, must be taken to refer to the county-mentioned in the deed as the residence of the grantors. We therefore think that the alleged defect does not invalidate this mortgage-
The other question made in argument arises on the claim of the-defendants, Gebhart, Bro. & Co., for lumber furnished by them toBennet & Petticrew, for the purpose of erecting buildings upon the premises against which the creditors are asserting their liens. These premises consist of two lots — Nos. 1,850 and 1,851 — in the city of Dayton. Gebhart, Bro. & Co. furnished lumber at sundry times, commencing March 17, 1853, and ending May 11th, of the same 251] *year, for the erection of buildings on each of said lots, in. pursuance of a contract or arrangement with the owners to that effect. Separate accounts wore not made of the lumber furnished for the buildings on the different lots, but the items were all entered in one general account, in the order of the dates of delivery, and amount in the aggregate to $527.07. On this entire account a payment of $200 was made May 23, 1853, leaving a balance of $327.07; for which sum Gebhart, Bro. & Co., on the 6th of September, 1853, filed their account in the proper office, pursuant to the provisions-of the “ act to create a lien in favor of mechanics and others in certain cases.” Swan’s Stat. 551. They now seek to assert their lien under this act. There is testimony in the case tending to show that portions of this lumber, amounting in the bill to $84.91, were not in fact used, in the buildings erected on the lots against which the-liens are sought to be enforced; and it is claimed by some of the parties that, to this extent, the lien must therefore fail. We do not so understand the statute. The first section of the act referred to provides “that any person who shall furnish materials for erecting or repairing any house, or other building, by virtue of an agreement with the owner thereof, shall have a lien,” etc. We think a fair construction of this section must extend the lien to all the ma *252, 253 terial in good faith furnished for the purpose of erecting or repairing a house in pursuance of an agreement with the owner, notwithstanding a part of the material may subsequently be otherwise appropriated without the consent of the party furnishing it.
The $200 payment, which was made generally on the entire account, must be considered as paid in discharge of the earlier items. 11 E. C. L. 36.
The lien of the remaining items will attach to the ^several [252 buildings and lots, for the use of which they were respectively furnished.
As the cáse is not in a condition for final decree, and a further reference to a master will probably be necessary, it will be remanded to the district court for further proceedings and final decree, in accordance with the principles above stated.
Bartley, C. J., and Swan, Brinkerhoee, and Bowen, JJ., concurred.